## MRS. WESLEY A. CURO v. CITIZENS FUND MUTUAL FIRE INSURANCE COMPANY.[1]

May 27, 1932.

No. 28,844.

*Ryan, Ryan & Ryan, Boutelle, Bowen & Flanagan,* and *Leonard W. Simonet,* for appellant.

*Swanson, Swanson & Swanson,* for respondent.

STONE, J.

September 6, 1927, defendant insured plaintiff's dwelling under a valued policy, in the Minnesota standard form. The insurable value of the dwelling was fixed at $4,000, and it was insured for that sum. An additional $500 of insurance on contents is not involved. August 7, 1931, during the term of the policy, the dwelling was totally destroyed by fire. Defendant claimed the policy right to rebuild and gave timely notice of its election to do so. Plaintiff, insisting it was her right to take the full insurance in money, commenced this action for a permanent injunction restraining defendant from entering upon the property to rebuild the house or for any other purpose. Upon order to show cause a temporary injunction issued, and defendant appeals.

[1]Reported in 242 N. W. 713.

We need not dwell upon the dual character of the policy provisions arising from the fact that they are the language of statute as well as contract. In any view, the question is one of construction, nothing more. The use of our standard fire insurance policy is required by G. S. 1923 (1 Mason, 1927) § 3512, and its provisions are thereby prescribed. The only issue is whether defendant as insurer must pay the total loss in cash, as plaintiff demands, or may elect, in lieu of such payment, to rebuild plaintiff's dwelling.

Plaintiff's position is based on G. S. 1923 (1 Mason, 1927) § 3516, requiring insurers before accepting a building risk to "cause such structure to be previously examined, a full description thereof to be made, and its insurable value to be fixed * * * and the amount thereof to be stated in the policy." In the absence of any change increasing the risk, without the insurer's consent, and intentional fraud on part of the insured, "the whole amount mentioned in the policy * * * shall be paid in case of total loss, and in case of partial loss, the full amount thereof." That is our valued policy statute. It first came into our law as a part of L. 1895, p. 392, c. 175, § 25–"An act to revise and codify the insurance laws of the state." Companion to it, as § 53, was our first effective standard policy statute. Both have continued to the present time with no change relevant to the present inquiry.

The statutory standard policy contains appropriate provisions, present and invoked by plaintiff in this case, obligating the insurer under a valued policy to pay the full amount of the insurance in case of a total loss on buildings. But, qualifying that obligation, there is equally explicit language reserving to the insurer the right to rebuild in case of total loss, or to repair in case of partial loss, of a building. L. 1895, pp. 392, 420, c. 175, § 53, G. S. 1923 (1 Mason, 1927) § 3512(7). It reads as follows:

"In case of any loss or damage, the company, within sixty days after the insured shall have submitted a statement as provided in the preceding clause, shall either pay the amount for which it shall be liable, which amount, if not agreed upon, shall be ascertained by award of referees, as hereinafter provided, or replace the prop-

erty with other of the same kind and goodness, or it may, within fifteen days after such statement is submitted, notify the insured of its intention to rebuild or repair the premises or any portion thereof separately insured by this policy, and shall thereupon enter upon said premises and proceed to rebuild or repair the same with reasonable expedition."

The decision below went upon the ground that the option thus given the insurer does not apply in case of total loss on buildings, a view in which we cannot concur. There is no conflict between the language granting the option and the provisions, already quoted, liquidating the recovery for total loss under a valued policy at the amount of insurance. It is not at all uncommon for contracts to state in unequivocal language a promise to pay money and then to qualify the obligation by giving the promisor the election to discharge it in some other manner, as by the rendition of services for or the delivery of property to the promisee.

"A promise of one of several alternative performances will give the choice of alternatives, unless the contrary is stated, to the person who is to render the performance." 3 Williston, Contracts, § 1407.

Such is the simple and plain purpose of the language giving the insurer the right to "rebuild or repair." The precise question was so decided in Temple v. Niagara F. Ins. Co. 109 Wis. 372, 85 N. W. 361.

No case has been cited justifying a contrary construction of the controlling policy provisions. The books deal with two kinds of standard policies, one the result merely of agreement and custom of insurers, and the other established by mandatory statute. It is the latter with which we are now concerned. It is true, as Dean Vance says (Vance, Ins. [2 ed.] § 208) that "when the standard form is used in those states in which a standard policy has not been adopted, any terms or conditions repugnant to local statutes are invalid." In such case, under a "valued policy" statute, there can be no option to repair or rebuild. That is, with a valued policy law

such as ours, and without statutory authority otherwise for the inclusion in policies of the insurer's option to rebuild, any attempt to include it is ineffectual.   If under such circumstances it is found in a policy it is void.   That is the sole effect of such cases as Fadanelli v. National S. F. Ins. Co. 113 Neb. 830, 205 N. W. 642; Milwaukee M. Ins. Co. v. Russell, 65 Ohio St. 230, 62 N. E. 338, 56 L. R. A. 159.   See also 7 Cooley, Briefs on Ins. (2 ed.) 6556.   The basis for such decisions is reversed as to effect, or at least disappears, when, as here, we have a statute not only permitting but also requiring the policy to contain, with the valued policy provisions, the insurer's option to rebuild.

The history of the statutory standard policy, the valued policy provisions, and the insurer's option to rebuild, is all very interesting but too familiar to justify anything more than mere reference here. Among other things, the purpose is to prevent overinsurance as a temptation to incendiarism.   It would be much hindered if, under a long term valued policy, buildings had depreciated far below policy value, and the insurer, notwithstanding, should be denied its option to rebuild after total loss.   In periods of marked depression, particularly if the onset were sudden, the rewards of arson would be great.   So, everything else aside, one of its plain purposes militates against the construction of the standard policy which plaintiff advocates.

It follows that the order must be reversed.

So ordered.