**A. H. JACOBSON CO. v. COMMERCIAL UNION ASSUR. CO., Limited.**

Civ. No. 2827.

United States District Court
D. Minnesota, Fourth Division.

March 3, 1949.

Leonard, Street & Deinard, of Minneapolis, Minn., for plaintiff.

Bowen & Bowen, of Minneapolis, Minn., for defendant.

JOYCE, District Judge.

A. H. Jacobson Company, a Minnesota corporation, sues the Commercial Union Assurance Company, Limited, a corporation existing under the laws of Great Britain, to recover upon a standard policy of fire insurance. Since jurisdiction is predicated upon diversity of citizenship, the law of Minnesota, so far as ascertainable, controls the rights and liabilities of the parties.

On April 21, 1947, the parties entered into a contract whereby the defendant insured the plaintiff to the extent of $5,000 against all loss or damage by fire to a building situated at 1301–1307 West Lake Street in the City of Minneapolis, Minnesota. The policy fixed the insurable value of the building at $22,000, and contained a clause making the insured a co-insurer unless it maintained contributing insurance to the extent of 90 per cent of the actual cash value of the building at the time of the loss. Plaintiff avoided becoming a co-insurer by securing an additional $15,000 worth of fire insurance from other insurers. The policy further provided that in the event of any loss or damage the insured should submit proof of loss "forthwith"; that if the parties disagreed as to the amount of the loss, the same should, except in case of total loss, be determined by appraisers; and that the insurer should either pay the amount for which it was liable within 60 days after receipt of the proof of loss, or notify the insured within 15 days after receipt of such proof of its intention to rebuild or repair.

The building here involved was erected in 1911. It had a frontage of 93.55 feet along the south side of West Lake Street. The interior was divided into two sections by a partition wall with several doors which provided means of passage from one section to the other. The west 30 feet of the building, referred to as the west section, had a depth of 92 feet. The remaining portion, designated the east section, had a depth of 80 feet. Except for the rear wall of the east section which was constructed of concrete blocks, the building was of wood frame construction. During April, 1947, the building was being used by plaintiff's tenant as a show room for second-hand automobiles.

Subsequent to the erection of plaintiff's building but prior to 1947, the City of Minneapolis adopted an ordinance establishing Fire Limits, within which area plaintiff's building was located. In addition, the city enacted a Building Code controlling the kind and character of new construction and of repairs to existing structures which would be permitted within the Fire Limits. Not only did the Building Code require that all new buildings be constructed with exterior masonry walls supported by concrete foundations extending three feet six inches below the surface of the ground, but it also made the following provision: "Section 405. Damaged Buildings within the Fireproof District and Fire Limits. Frame buildings damaged by fire, collapse, or other cause to the extent of forty (40) or more per cent of the value of a similar new building shall not be repaired or rebuilt but shall, if dangerous in the opinion of the Inspector of Buildings, be removed. If damaged to a lesser extent, they may be restored to their original condition."

A fire occurred during the forenoon of April 28, 1947 which resulted in damage to plaintiff's building. Within a few days after the fire, an inspection of the damaged premises was made by Assistant Building Inspector Rodmyre, and a written statement was submitted to the Building Inspector which reported a total loss of the west sec-

tion and substantial damage to the east section. On the basis of this report, and after conversations with Rodmyre, the Building Inspector refused, on July 7, 1947, to issue a permit to repair or rebuild the damaged building so as to restore it to its previous condition. Thereafter new plans were submitted to the Inspector which proposed construction of a building conforming to the requirements of the Building Code. These plans were approved August 14, 1947, and plaintiff started the construction of a new building.

In constructing the new building, plaintiff's contractor utilized all the material from the damaged building which could be salvaged. Thus, insofar as the roof structure of the east section remained undamaged, it became a part of the new building. The same was true of the salvageable lumber and the undamaged portion of the heating, plumbing and electrical equipment. After utilizing the salvageable material from the damaged building, the cost of the new building exceeded $43,000. Plaintiff's contractor testified that this cost exceeded the minimum cost of building in conformance with the Building Code by between $3,000 and $8,000. Thus, it was the contractor's opinion that the minimum cost of a new building, of the same dimensions as the old, under the Building Code, and after utilizing all possible salvageable material, would have been between $35,000 and $40,000.

Following the fire both plaintiff and defendant secured estimates of the cost of repairing the damaged building on the assumption that it could be restored to its pre-fire condition. Although the parties agreed that cost of repairs would be somewhat in excess of $17,000, defendant contended that this figure should be considerably decreased in order to reflect the depreciated condition of the building. No settlement was reached, and on July 7, 1947, the same day that the Building Inspector refused to issue a permit to repair or rebuild, the insurer's adjuster wrote plaintiff seeking arbitration of the amount of the loss. When plaintiff refused to appoint an appraiser, defendant secured an order from the District Court of Hennepin County appointing an umpire. This order was vacated by the same court on December 1, 1947 on the ground that any demand for appraisement was premature until after the insured had submitted proof of loss. The order vacating the order appointing an umpire was appealed to the Supreme Court of the State of Minnesota, which court affirmed the action of the trial court in Boston Insurance Co. v. A. H. Jacobson Co., 1948, 226 Minn. 479, 33 N.W.2d 602.

In the meantime, on November 24, 1947, plaintiff submitted its proof of loss, and the same was returned by defendant. On December 2, 1947, defendant again wrote plaintiff demanding an appraisement but at the same time reserved all rights with respect to the questions of extent of, or liability for, the loss. Plaintiff's response to this demand was a letter in which it appointed an appraiser, but reserved the right to have the question of the existence of a total loss determined by a court of competent jurisdiction. The arbitration proceedings are still pending. In July, 1947, plaintiff sued in the District Court of Hennepin County alleging a total loss. Defendant removed the case to this court.

Plaintiff claims a right to recover as for a total loss under the facts established and the applicable decisions of the Supreme Court of Minnesota. If plaintiff is to recover at all in this action, it must be upon the basis of a total loss, for the parties, in their insurance contract, have agreed to submit the question of the extent of a partial loss to arbitrators. Defendant denies plaintiff's claim on the grounds that: (1) the loss was partial and not total; (2) the ordinance under which the Building Inspector acted was unconstitutional, or if constitutional, was not controlling upon the defendant's rights; and (3) the conduct of plaintiff precluded its recovery. Finally, even though the loss be total and defendant liable, the parties disagree on the measure to be used in evaluating the remnants of the damaged building.

 (1) On the question of whether the loss was total, plaintiff relies upon two rules which have been enunciated by the Supreme Court of this state. The first rule says that where a city ordinance prohibits the repairing of a building damaged by fire, the insured suffers a total loss. Larkin v.

Glen Falls Insurance Co., 1900, 80 Minn. 527, 83 N.W. 409, 81 Am.St.Rep. 286. Thus, assuming for the purpose of this phase of the discussion that the ordinance and the action taken by the Building Inspector thereunder were valid, plaintiff's loss is total. The second rule relied upon by plaintiff provides that where a fire results in an actual loss exceeding the amount of insurance on a building, the loss is to be treated as total. Oppenheim v. Fireman's Fund Ins. Co., 1912, 119 Minn. 417, 138 N.W. 777; Ohage v. Union Ins. Co., 82 Minn. 426, 85 N.W. 212. The applicability of this rule to the facts of the present case depends upon whether an insured's actual loss is to be measured by the cost of restoring the building to its condition before the fire, or by the cost of restoring it in conformance with the requirements of the Building Code. Although the Minnesota Court has not ruled on this precise question, I believe the latter approach reflects the more accurate measure of an insured's actual loss. Other jurisdictions have taken this view. Hewins v. London Assurance Corp., 1903, 184 Mass. 177, 68 N.E. 62; Pennsylvania Co. v. Philadelphia Contributorship, 1902, 201 Pa. 497, 51 A. 351, 57 A.L.R. 510. Furthermore, to measure the insured's actual loss by the requirements of the ordinance is consistent with language used by the court in the Larkin case, supra, 80 Minn. at page 531, 83 N.W. at page 410, 81 Am.St.Rep. 286. There the court said: "The parties are presumed to know of the ordinances. They directly and materially affect their rights in case of a loss under the policy, and *should govern and control in the adjustment and settlement of such loss.*" (Emphasis supplied.) In the present case, if the insured was to rebuild at all, it had to be in conformance with the ordinance. To do so, required an expenditure far in excess of the total insurance on the building. Thus, under the rule in the Oppenheim and Ohage cases, plaintiff should recover as for a total loss.

■ (2) To avoid the application of these rules, defendant claims that the ordinance violates the due process clauses of the state and federal constitutions; or, in the alternative, if the ordinance is constitutional, it is not determinative of defendant's rights and liabilities herein, either because inapplicable to the facts of this case, or because of non-compliance by the Building Inspector with its provisions.

The question of the constitutionality of the ordinance here involved merits no extended discussion. The initial presumption in favor of the constitutionality of any law is here buttressed by decisions of the Minnesota Court holding similar ordinances a proper exercise of the police power. Zalk & Josephs Realty Co. v. Stuyvesant Ins. Co., 1934, 191 Minn. 60, 253 N.W. 8; Larkin v. Glen Falls Ins. Co., supra; and see Alexander Co. v. City of Owatonna, 1946, 222 Minn. 312, 322, 24 N.W.2d 244. With respect to this type of legislation the United States Supreme Court has consistently taken the attitude that broad powers reside in the states. Cf. Queenside Hills Co. v. Saxl, 1946, 328 U.S. 80, 66 S.Ct. 850, 90 L.Ed. 1096; Hadacheck v. Sebastian, 1915, 239 U.S. 394, 410, 36 S.Ct. 143, 60 L.Ed. 348, Ann.Cas.1917B, 927. Defendant cites no authority contrary to the foregoing view but argues that under the circumstances of this case the ordinance must be deemed unconstitutional since no opportunity was afforded defendant to question its validity or the propriety of the action taken thereunder. The answer to this argument is, of course, obvious. Assuming that defendant's interest was such as to give it the right to question the validity of the ordinance or the propriety of the action of the Building Inspector, that right has not been lost or prejudiced. Defendant is presently having its hearing on these questions. Due process does not require more. Cf. Zalk & Josephs Realty Co. v. Stuyvesant Ins. Co., supra, 191 Minn. at page 68, 253 N.W. 8.

■ However, aside from the question of constitutionality, defendant claims the ordinance is not determinative of its rights. First, the argument is made that the facts of this case show the building was not damaged more than 40 per cent of the value of a similar new building within the meaning of Section 405 of the Building Code. This argument is based upon the contention that the phrase "damaged by fire, collapse, or other cause" in Section 405 does not comprehend deterioration and decay. In his actions, the Building Inspector took the posi-

tion that "other cause" required him to take into consideration deterioration and decay in computing the extent of the damage to plaintiff's building. Defendant seeks to invoke the rule of ejusdem generis and thereby limit the scope of "other cause" to causes in the nature of fire and collapse. However, the so-called rule of ejusdem generis is merely a rule of construction designed to aid the court in its determination of legislative intent. It is not controlling, and where the intention of the legislative body is otherwise apparent, should not be applied. Westerlund v. Kettle River Co., 1917, 137 Minn. 24, 162 N.W. 680. See Orme v. Atlas Gas and Oil Co., 1944, 217 Minn. 27, 39, 13 N.W.2d 757. In the present case, I believe it is apparent from other provisions of the Building Code that the legislators did not intend the phrase "other cause" in section 405 to be given the restricted meaning urged by defendant. For example, the provision for condemnation of buildings in Section 111 uses the words "any cause", which clearly includes deterioration and decay. Again, in Section 308, where existing buildings are defined, there appears the phrase "when damaged to the extent of forty (40) or more per cent of its value by fire, collapse, or decay". Furthermore, the obvious purpose of Section 405 is the gradual elimination of frame buildings within the Fireproof District and Fire Limits, and this purpose can be best accomplished by construing "other cause" to include deterioration and decay. It is my opinion, therefore, that the Building Inspector properly considered the extent of deterioration and decay as a factor in determining the percentage of damage to plaintiff's building.

As a second ground for holding that the ordinance was not determinative of its rights and liabilities, defendant claims the action taken by the Building Inspector was not in conformance with the provisions of the law under which he purported to act. Defendant points to the fact that the Inspector did not order removal of the remnants of the building, and thus could not be deemed to have acted under Section 405. A cursory reading of the cited section indicates the fallacy in this line of argument. The section does not require the removal of all frame buildings damaged to the extent of 40 per cent. Only if dangerous in the opinion of the Building Inspector shall he order a building removed. If not dangerous in his opinion, a damaged building could remain standing forever. Thus, the failure of the Building Inspector to order removal of the plaintiff's damaged building is no evidence at all of non-compliance with the provisions of Section 405.

(3) Finally, defendant denies liability upon the ground that the conduct of plaintiff precludes its recovery. This ground is based upon two assertions: (1) plaintiff's failure, from July 7 to October 15, to disclose the denial of a permit to repair or rebuild is indicative of fraud; (2) plaintiff, by starting to rebuild before submitting proof of loss, deprived the insurer of the right to rebuild and thereby breached the contract.

The first of these assertions is patently unfounded. Although it is true that plaintiff failed to divulge the fact of a permit being refused for a considerable period of time, there is no basis for finding that this was a "wilfull attempt to conceal" in order to deprive defendant of any of its rights. At the most, this delay, together with the delay in filing the proof of loss, evinced a reluctance on the part of plaintiff to commit itself to any certain basis for recovery until its rights were reasonably ascertainable. As before noted, this failure to afford defendant an opportunity to question the validity of the ordinance and the propriety of the action of the Building Inspector worked no irreparable harm to defendant, for defendant has raised those issues in the present action. The facts and the law in this case have given rise to numerous claims and counter-claims, asserted rights and denials thereof, and to disputed theories of insurance law, all of which has occasioned considerable delay in the final settlement of plaintiff's claim, but there has been no showing of any fraud on the part of either plaintiff or defendant.

The other assertion of defendant, namely, that plaintiff by starting to rebuild before submitting proof of loss deprived defendant of a right to rebuild and thereby breached the insurance contract, rests upon a false assumption. The defendant refers to its right to rebuild when in fact it

never acquired such a right. Under the policy, defendant was given an option which if exercised within fifteen days after receipt of the proof of loss would give defendant a right to rebuild. By exercising its option, defendant could have substituted a construction contract for its original contract of insurance. See Cussler, Jr. v. Firemen's Insurance Co., 1935, 194 Minn. 325, 260 N.W. 353. But whether this substitute contract and the rights arising thereunder were ever to come into existence or not depended upon a timely exercise of the option. Cf. Midwood Sanatorium v. Fireman's Fund Ins. Co., 261 N.Y. 381, 185 N.E. 674. In the present case, there was nothing to prevent defendant from exercising its option, but it did not do so. It is not, therefore, in the position of the insurers in Curo v. Citizens Fund Mutual Fire Ins. Co., 1932, 186 Minn. 225, 242 N.W. 713, and Cussler, Jr. v. Firemen's Insurance Co., supra. In those cases the insurers had exercised their options within the time provided in the policy, and the courts held that they had a right to rebuild even though the loss was total. Not having exercised its option in the present case, defendant cannot assert the rights recognized in those cases. If defendant had exercised the option given by the policy, it would then be necessary to determine whether the right to rebuild had been waived by defendant's demands for appraisal. It is not necessary under the circumstances of this case.

The only question remaining for determination is the proper measure of plaintiff's recovery. Defendant claims, and plaintiff does not deny, that a recovery under the rule in the Larkin case must reflect a credit for the material salvaged from the damaged building. The conflict arises over the value which should be accorded the salvaged material. Plaintiff contends that, under the rule in the Larkin case, the credit to be allowed should reflect only the value of the remnants upon the second-hand or scrap market, and only to the extent that such value exceeds the cost of removing the remnants. In the present case, the evidence showed that the scrap value of the salvageable material would not exceed the cost of

its removal. Therefore, plaintiff argues that it is entitled to recover the total amount of insurance. However, in the Larkin case the remnants of the building were actually removed, and defendant points to the fact that, in the present case, the remnants of the building were not removed and sold but actually became a part of the new building. Thus, according to defendant, the value of the salvage should be equal to the savings thereby effected by plaintiff, and since a new roof structure, lumber, boiler and oil heater would have cost plaintiff between $12,000 and $14,000, this amount should be deducted from plaintiff's recovery. This represents defendant's "realistic" approach to the question of the measure of damages. I cannot agree with this measure. If necessary to the decision, I believe that the value urged by plaintiff should be used in measuring the credit required by the Larkin case. But such a holding is not necessary. Whatever value is given the material salvaged from the damaged building, the fact remains that plaintiff's actual loss exceeded the total insurance on the building, and, under the rule laid down in the Oppenheim and Ohage cases, plaintiff is entitled to recover the face value of its policy.

It has come to my attention that a decision of the District Court of Hennepin County concerning a policy of fire insurance upon the same building as here involved was not inconsistent with the foregoing conclusions, and while not binding on this court, tends to confirm this court's convictions with respect to the applicable state law.

When this cause came on for trial the parties through their respective counsel stipulated that decisions in A. H. Jacobson Co. v. Boston Insurance Co., (Civil No. 2826) and A. H. Jacobson Co. v. Phoenix Assurance Co., Ltd. (Civil No. 2828) should abide the result in the present case. Therefore, judgment in accordance with plaintiff's prayer shall be entered for plaintiff in all three cases. Findings of Fact, Conclusions of Law and Order for Judgment consistent with the foregoing views may be supplied by the plaintiff.