Commonwealth, Appellant, *v.* Brady et al.

Argued June 14, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Stephen B. Harris,* First Assistant District Attorney, with him *Herman Rosenberger,* Assistant Attorney General, and *Kenneth G. Biehn,* District Attorney, for Commonwealth, appellant.

No brief submitted nor appearance entered for appellee.

OPINION PER CURIAM, June 21, 1974:

The above-captioned case is an appeal from the order of the Court of Common Pleas, Criminal Division, Bucks County, denying the petition of the Attorney General of Pennsylvania and the District Attorney of

Bucks County for witness immunity. The defendants, Warren Brady and Henry George, are supervisors of a Bucks County Township and they are charged with extortion and prohibitive acts by a public official. The prosecution sought immunity for two witnesses to testify to being extorted and receiving money from the supervisors. The court below found that the Immunity Act in the circumstances did not empower the granting of immunity to these witnesses and in a very able opinion held that the immunity to these witnesses did not fall within the provisions of the Immunity Act of 1968, 19 P.S. §§640.1 and 640.2.

This Court on September 10, 1973, quashed the appeal and on January 9, 1974, the Supreme Court of Pennsylvania returned the case to the Superior Court for consideration on the merits.

Offering immunity at any time is a dangerous practice, human nature being what it is, and is a clear invitation to defendants to commit perjury. It is the kind of practice too, that is certain to be abused by law enforcement officials to the detriment of innocent people. It was initiated as a weapon against organized crime and racketeering and should be strictly limited to that purpose. This case does not fall in that category.

We would affirm on the very able opinion of Judge LUDWIG of the court below.

WRIGHT, P. J., and SPAULDING, J., did not participate in the decision of this case.

———

DISSENTING OPINION BY CERCONE, J.:

This appeal arises from the lower court's refusal to grant the Commonwealth's petition that "transactional" immunity be granted to Joseph DiEgidio and John Camerlengo so that they might be compelled to testify under the Act of November 22, 1968, P. L. 1080, No.

333, 19 P.S. §640.1 *et seq.*[1] The facts underlying this appeal are as follows:

On August 10, 1972, a complaint was filed charging Warren Brady and Henry George, two duly elected supervisors of Bensalem Township, with extortion, prohibited acts by a public officer and conspiracy. Subsequently, at the preliminary hearing, the conspiracy charge was dropped, but the Justice of the Peace ruled that the Commonwealth had made out a prima facie case on the two remaining charges. Specifically, the Commonwealth alleged that Brady and George had extorted money and other valuable property, including a Cadillac, from DiEgidio and Camerlengo in return for the granting of subdivision approvals and zoning changes which were needed by DiEgidio and Camerlengo in their construction business.

When the case came before the Grand Jury, both Camerlengo and DiEgidio, who were called as witnesses for the Commonwealth, invoked their Fifth Amendment privileges against self-incrimination. The Commonwealth then filed a petition in compliance with the aforementioned "immunity act." A hearing was scheduled for the petition, but prior to taking any testimony the hearing court dismissed the petition. However, in order to establish a factual context for the purposes of appeal, the learned court did allow the Commonwealth to read an offer of proof into the record. That offer of proof indicated that the Commonwealth was prepared to show at least twelve instances of extortionate conduct by the appellees if DiEgidio and Camerlengo were compelled to testify.

---

[1] Neither the witnesses nor the potential defendants filed briefs in this case. This is probably because there is considerable doubt as to the existence and the extent of any legally cognizable interest such persons have in the court's decision to allow the grant of immunity. See *Riccobene Appeal,* 439 Pa. 404 (1970).

The court reasoned, in a well written and scholarly opinion, that the conduct of Brady and George was not "racketeering" or "organized crime" within the intendment of the immunity act. More particularly, the lower court cited as dispositive the Commonwealth's failure to allege a conspiracy to commit extortion. Therefore, the court reasoned that the act was not applicable to that proceeding, regardless of the apparently vital need for the testimony.[2]  I disagree.

The two sections of the immunity act which are to be construed in the instant case read as follows:

"§640.1 Organized crime or racketeering; order to testify.

"If, in a *proceeding relating to* organized crime or *racketeering* before a court, grand jury or investigating body set up by legislative enactment or by order of the Governor, any person shall refuse to testify or to produce evidence of any other kind on the ground that his testimony or evidence may tend to incriminate him, that person may be ordered to give such testimony. The order to testify shall not be given except upon an order of court after a hearing in which the Attorney General has established a need for the grant of immunity, as hereinafter provided. . . . (Emphasis added.)

"*§640.6 'Organized crime'; 'racketeering.'* As used in this act—'Organized crime' and 'racketeering' shall

---

[2] Similar federal statutes have been construed as permitting federal courts to determine whether the proceedings involved or related to the requisite offenses. *In re Russo*, 448 F. 2d 369 (9th Cir. 1971); *United States v. DiMauro*, 441 F. 2d 428 (8th Cir. 1971); *In re Bart*, 304 F. 2d 631 (D.C. Cir. 1962). The courts' determinations, however, are strictly limited to those conditions precedent which can fairly be said to have been left with the courts by the legislature after a careful reading of the entire statute. See, e.g., *Ullman v. United States*, 350 U.S. 422, 432-34, 76 S. Ct. 497, 100 L. Ed. 511 (1956); *United States v. Singleton*, 460 F. 2d 1148 (2d Cir. 1972).

include, but not be limited to, conspiracy to commit murder, bribery or extortion, narcotic or dangerous drug violations, prostitution, usury, subornation of perjury and lottery, bookmaking or other forms of organized gambling."

Subsection 6 of this Act seeks to define organized crime and racketeering *in part* by reference to the crimes which frequently accompany organized crime. It expressly provides, however, that organized crime "shall include, *but not be limited to*" those enumerated crimes. The question then becomes what are the omitted criminal activities which sufficiently evidence organized crime and racketeering to trigger the operation of the act. Furthermore, is a conspiracy the *sine qua non* of the act? Fortunately, while the legislative journals are devoid of floor discussions or debates on the issue here involved, the legislature has spoken less cryptically to the question of what it considers to be organized crime and racketeering.

The Pennsylvania Corrupt Organizations Act of December 6, 1972, P. L. 1482, No. 334, 18 Pa. C.S. §911 (1973), makes the investment in legitimate businesses of "income derived, directly or indirectly, from a *pattern of racketeering activity*" a felony of the first degree. Furthermore, while the act has the avowed purpose of curbing the infiltration of *organized crime* into the world of legitimate business,[3] the legislature uses "pattern of racketeering activity" as the operative terminology—obviously equating the amorphous term "organized crime" with its concomitant "pattern of racketeering activity." The statute then defines a "racketeering activity" to be any one of many enumerated crimes, including Chapter 39 crimes under the Crimes Code.[4] Extortion, being a Chapter 39 crime, is

---

[3] 18 Pa. C.S. §911(a) (1973).

[4] 18 Pa. C.S. §911(h)(1) (1973).

therefore a "racketeering activity" under the Corrupt Organizations Act. Finally, the Corrupt Organizations Act defines a "pattern of racketeering activity" as "a course of conduct requiring two or more acts of racketeering activity one of which occurred after the effective date of this section."[5] Thus it is clear that under the Corrupt Organizations Act the allegation of twelve separate extortions also states the required pattern of racketeering activity—the operational equivalent of organized criminal activity or racketeering under that act.

There appears to be no legislative indication or reason to warrant restriction of the definition of organized crime and racketeering under the immunity act to conspiracies to commit particular crimes. This is especially true in light of the expansive definition of organized crime and racketeering in the Corrupt Organizations Act. "Statutes in pari materia shall be construed together, if possible, as one statute."[6]

First, the immunity provision of the Corrupt Organizations Act adopts by reference the immunity act hereunder consideration, and extends its application to *civil proceedings* where there is a *pattern of racketeering activity*.[7] There is no requirement that the Commonwealth allege a conspiracy to commit a racketeering activity. It therefore seems incongruous to suggest that the legislature sought to grant broader immunity powers to the Attorney General in civil proceedings where only a divestiture or injunction might be at stake; and where, because of the less severe sanction to be imposed upon the defendant, the "immunized" witness would be more easily induced to commit perjury —or at least less motivated to tell the truth.

---

[5] 18 Pa. C.S. §911(h)(4) (1973).

[6] Act of November 25, 1970, P. L. 707, No. 230, 1 Pa.S. §1932(b) (1963).

[7] 18 Pa. C.S. §911(g) (1973).

Second, it is well recognized that district attorneys have wide latitude in promising immunity to witnesses in return for testimony that would otherwise be self-incriminating, if the court approves the agreement.[8] Practically speaking, the only substantial difference between such bargains for immunity and the kind of immunity which may be granted under the immunity act is that the latter is an offer the defendant cannot refuse.

Third, in common parlance, extortion is the epitome of racketeering. Webster's Seventh New Collegiate Dictionary, G. & C. Merriam & Co., Springfield, Mass. (1967 ed.) defines a racketeer as: "One who *extorts* money or advantages by . . . unlawful interference with business or employment." Because of its clandestine nature, and the fact that the witnesses are usually in *pari delicto,* extortion is extremely difficult to prove without the testimony of either the defendant or the person he extorted. Of course, if the "victim" testifies, he most often provides the Commonwealth with sufficient evidence to convict him of bribery. Hence, in order to prove extortion, it is frequently necessary to grant immunity to the "victim." Thus, the interpretation of the immunity act which the lower court deemed proper would frustrate the Commonwealth's attempts to prosecute for extortion, the very crime which is most frequently associated with racketeering.

Fourth, the lower court determined that the immunity act and the Corrupt Organizations Act were not in "pari materia" and, therefore, need not be construed together as provided by the Act of November 25, 1970, P. L. 707, No. 230, 1 Pa. S. §1932(b). The court based this conclusion on the fact that there were crimes enumerated in the Corrupt Organizations Act which

---

[8] See generally 21 Am. Jur. 2d, Criminal Law, §§146 et seq. (1965).

were not enumerated in the immunity act. The two acts being manifestly different, the court determined the statutory rule of construction not to be applicable. Of course this rationale ignores the fact that while the Corrupt Organizations Act lists all the crimes that constitute a racketeering activity, the immunity act *expressly omits* enumerating certain kinds of criminal activity which constitutes organized crime and racketeering. Also, the court's reasoning in this regard is circular. The court decided that some of the crimes in the Corrupt Organizations Act are not crimes contemplated by the immunity act because the two acts are not in *pari materia*. And, the court reasoned, the two acts are not in *pari materia* because some of the crimes enumerated in the Corrupt Organizations Act do not appear in the immunity act. There is a facile explanation for the difference in the specificity of the two acts, however. Since the Corrupt Organizations Act creates a substantive offense, a lack of specificity as to its elements could render the statute unconstitutionally vague. On the other hand, the immunity act would suffer from inflexibility if the conditions for its application were stringently defined.

Finally, the lower court reasoned that the rule of construction, *ejusdem generis,* leads to the conclusion that a conspiracy must be alleged as a condition precedent to the application of the immunity act. I disagree. It is not clear that "conspiracy" was used to qualify any of the enumerated crimes other than murder. In this regard it should be noted that, like extortion, those enumerated crimes typically require the collaboration of more than one person for their commission. Murder is the only exception. Thus, it is certainly reasonable to construe the act to require conspiracy only in the case of crimes like murder which do not necessarily entail conspiracy or collaboration. In any event the rule of *ejusdem generis* does not warrant the court in

construing a statute more narrowly than the legislature actually intended: *Commonwealth v. Klucher*, 326 Pa. 587, 590 (1937) ; *Commonwealth v. Figari*, 166 Pa. Superior Ct. 169, 172 (1950). Therefore, the rule should not be applied where the intention of the legislature is otherwise apparent, *A. H. Jacobson Co. v. Commercial Union Assur. Co.*, 83 F. Supp. 674, 678 (D. Minn. 1949) ; *City of Lexington v. Edgerton*, 159 S.W. 2d 1015, 1017 (Ky. 1941) ; and, the Corrupt Organizations Act is a more reliable indication of the legislature's intention in this case.

In conclusion, I am convinced that a construction of the immunity act which requires the allegation of a conspiracy to commit extortion is not warranted because of the clear intention of the legislature to employ broad new powers to eliminate the evil of organized crime and racketeering, especially when the racketeering is carried out in violation of a public trust.[9] In the typical case, such racketeering is merely one link in a pernicious chain which shackles honest men both private and public. This link must be broken if the legislature and the courts hope to prevent further erosion of the trust that the governed must have in their government. The legislature has determined, and I of course agree, that this is a condition that can no longer be tolerated. I would therefore reverse and remand for

---

[9] In a very recent federal court decision, a federal statute which involved "organized criminal activity" was broadly construed to encompass activities outside of the "godfather" stereotype. Similar to the instant case, that case also involved corrupt practices and ill-gotten gains by a government official, a Congressman. See *United States v. Carter*, 15 Crim. R. Rep. 1005 & 2029-30 (April 10, 1974). While the statute there involved was different from our "immunity act" in various significant aspects, the language of the court's opinion clearly reflects the court's recognition of the growing legislative intention that prosecutors be given the widest berth in halting this most serious of threats to our government and the welfare of our citizens.

a hearing wherein the judge will determine whether the Commonwealth has a sufficient need for the testimony of DiEgidio and Camerlengo as required by the act.

SPAETH, J., joins in this dissenting opinion.