## La Russa Appeal.

274

Argued September 9, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Burton A. Rose,* with him *A. Charles Peruto,* and *Peruto, Ryan & Vitullo,* for appellant.

*Charles Lang Duncan, Jr.,* Assistant Attorney General, with him *Walter M. Phillips, Jr.,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY WATKINS, P. J., December 11, 1974:

This is an appeal from the order of the Court of Common Pleas of Philadelphia County which directed that the defendant-appellant, Salvatore La Russa, be incarcerated for a period of six (6) months for contempt of court or until such time as he purges himself of that contempt by testifying before a Special Investigating Grand Jury. The court below found the appellant to be in contempt on August 2, 1974. The appellant is currently free on $7,500.00 bail.

The appellant had been subpoenaed to appear before the Special Investigating Grand Jury which was investigating police corruption in Philadelphia. On August 2, 1974, La Russa exercised his Fifth Amendment privilege against self-incrimination and refused to answer certain questions asked of him during the Grand Jury proceedings. Immediately thereafter the prosecutors petitioned the court to compel the appellant to testify pursuant to a grant of immunity under the Act of November 22, 1968, 19 P.S. §640.1-6 (No. 333). The petition was granted by the court below, the appellant again took the stand and again refused to answer certain questions directed to him. The court subsequently held him in contempt for his refusal to testify.

An issue which is not raised in the briefs, but which we feel is important, is that of jurisdiction. The Act of July 31, 1970, P. L. 673, No. 223, Art. II, §202 (17 P.S. §211.202), provides that the Pennsylvania Supreme Court has jurisdiction of appeals from final orders of the Courts of Common Pleas in cases of direct criminal contempt. In *Martorano Appeal*, 225 Pa. Superior Ct. 474, 310 A. 2d 683 (1973), this Court held that a lower court's contempt citation against a defendant who had refused to testify after having been granted immunity did amount to civil contempt since the contempt sentence was conditioned upon the witness's refusal to testify, that is, the witness could purge himself of con-

tempt at any time by testifying. Since the contempt sentence in this case is similar to the one in *Martorano,* supra, in that it is conditional in nature it is, therefore, civil contempt and this Court has jurisdiction to hear this appeal.

Appellant's contention in this appeal is that the Commonwealth's petition for immunity failed to comply with the requisites of the applicable statutes in that the petition does not establish that the subject matter of the appellant's testimony would relate to a conspiracy to benefit "organized crime."

Section 1 of the Act of November 22, 1968 (19 P.S. §640.1) provides in part that: "If, in a proceeding relating to organized crime or racketeering before a court, grand jury or investigating body set up by legislative enactment or by order of the Governor, any person shall refuse to testify or to produce evidence of any other kind on the ground that his testimony or evidence may tend to incriminate him, that person may be ordered to give such testimony. . . ." The Section goes on to provide for immunity for witnesses who so testify. The significant item of this section is that immunity can be provided under this Act only if the proceeding relates to "organized crime" or "racketeering."

Section 6 of the Act of November 22, 1968 (19 P.S. §640.6) defines "organized crime" and "racketeering" as including but not limited to: "Conspiracy to commit murder, bribery or extortion, narcotic or dangerous drug violations, prostitution, usury, subornation of perjury and lottery, bookmaking or other forms of organized gambling."

It is necessary here to examine the Commonwealth's petition requesting the grant of immunity in order to establish whether or not the grant of immunity was proper in this case. The Commonwealth's petition alleges that the appellant was a manager of a bar in

Philadelphia; that the appellant had knowledge of payments made to police officers by one Irvin Goltzer, the proprietor of the establishment; that the appellant himself made payments to police officers for the purpose of influencing them in the performance of their duties; and that the January, 1974 Special Grand Jury was charged with investigating police corruption in Philadelphia. It is not contested that the Special Grand Jury has the power to investigate police corruption. The appellant questions, however, whether the facts raised by the Commonwealth in its petition indicate that the appellant's testimony would relate to a conspiracy to benefit "organized crime" or "racketeering."

"Racketeering" is defined in Black's Law Dictionary as "an organized conspiracy to commit crimes or extortion or coercion, or attempts to commit extortion or coercion." Thus, it is the obtaining of money or other value from someone, with that person's consent, but after the person had been induced to give such money by the wrongful use of force or threats. Nowhere in the Commonwealth's petition is there mention of any facts pertaining in any way to anything having to do with racketeering. Thus, the only question presented is whether the petition relates to "organized crime" in any way.

In *Commonwealth v. Brady*, 228 Pa. Superior Ct. 233, 323 A. 2d 866 (1974), this Court affirmed on the opinion of the Honorable Edmund LUDWIG the lower court's reversal of a contempt sentence imposed upon a recalcitrant witness. In that opinion, it was reasoned that the Legislature had clearly set limitations on the scope of immunity in the Act of November 22, 1968, supra, and had limited such grants of immunity to situations involving "organized crime" and "racketeering." The Court goes on to point out that Section 6 of the Act sets forth types of conduct which may fall within the scope of "organized crime" and "racketeer-

ing." Section 6 is not inclusive but merely illustrates the types of conduct which may be involved in "organized crime." The court goes on to say that: "A common sense reading of section 6 impels the conclusion that the enumerated crimes were not intended to be co-extensive with the more abstract terms, 'organized crime and racketeering'. It is obvious that in a given instance such crimes may or may not be the product of underworld criminality, and frequently they are not. In this sense, 'organized crime and racketeering' appear in the Act as words of limitation, and the particular crimes set forth are simply illustrative of such a classification or category and, as such, are *ejusdem generis.*" Furthermore, the Court explained that the use of the word "include" in Section 6, does not impart equality of meaning between the crimes enumerated and "organized crime" and "racketeering." The conduct set forth in the statute therefore, may be the type for which immunity is authorized or, it may not be, depending upon its relationship to "organized crime" and "racketeering." Certainly no one would submit that all bribery, or all narcotics violations, or all prostitution would constitute a conspiracy for the benefit of "organized crime" regardless of the facts involved. Thus, a common sense reading of the statute compels us to hold that not all of the types of conduct mentioned in Section 6 of the Act relate to "organized crime" by their very nature but that their relationship to "organized crime" and "racketeering" must be shown before a grant of immunity can be authorized under this Act.

Turning to the Commonwealth's petition we find that it alleges that the Special Grand Jury was involved in investigating "widespread police corruption." The only facts which relate to appellant, however, are those which indicated that he was the manager of a bar, that he knew of certain bribes being passed to the police by one Goltzer and that he made such payments

himself. Nowhere in the petition is it stated how all of this relates to or was conducted for the benefit of "organized crime." Nor is it alleged just what the bribes were supposed to be for except to say that they were passed to influence the police in the performance of their duties. In any event it appears from the petition that these particular alleged bribes could very well be mere isolated incidents of police corruption. If that be the case, then where is the involvement of "organized crime" or "racketeering"? Is it the police who were involved in "organized crime"? Is it the bar owner's activity which relates to "organized crime"? If so, how is any of this related to or carried on for the benefit of "organized crime"? The petition is silent on these matters and fails to set forth in any way just how any of this relates to "organized crime." That being the case, the Commonwealth's petition falls short of that which is necessary for the granting of immunity under this particular Act and as such we must hold that the grant of immunity in this case was not authorized by the Act.

Furthermore, it is important to restrict grants of immunity to situations which are clearly within the applicable statutes as serious constitutional issues are involved, as well as, the public interest. The temptation to a witness to perjure himself in these situations is well known and neither individual liberties nor the public interest would be served unless grants of immunity are clearly within the statute providing for them. This is clearly the kind of legislative act that should be strictly construed to limit it to its stated purpose.

In this case the grant of immunity does not comply with the applicable statute in that the petition requesting it does not clearly relate to "organized crime" and "racketeering." Therefore, the judgment of the court below is reversed and the appellant discharged.

Dissenting Opinion by Jacobs, J.:

I respectfully dissent.

The Immunity Act[1] requires a "proceeding relating to organized crime or racketeering" and a "need for the grant of immunity." The Attorney General's petition must set forth the "nature of the investigation and the need for the immunization of the witness." I believe that such a proceeding existed here and that the Attorney General's petition was adequate.

The "proceeding" here is an investigation by a special grand jury into "widespread police corruption." In my opinion such an investigation is a "proceeding relating to organized crime." Although organized crime "has been associated with illegal gambling, loan sharking, illegal narcotics and liquor traffic, and prostitution"[2] its tenacles reach far beyond such activities. "The problem of organized crime is one which is real and immediate in our society. The networks and syndication of organized crime have grown to an extent that conventional state law enforcement agencies find themselves ill equipped to meet the challenge with which they are confronted."[3] Common sense dictates that if in fact there is widespread police corruption in the largest city in Pennsylvania, it cannot be separated from the influence of organized crime.[4]

---

[1] Act of Nov. 22, 1968, P.L. 1080, §§1-6, 19 P.S. §§640.1-0.6 (Supp. 1974-75).

[2] Comment, *The Pennsylvania Attack on Racketeers in Legitimate Enterprises*, 78 Dick. L. Rev. 176 (1973) ; *see* Pennsylvania Crime Commission, *Report on Organized Crime*, 25-47 (1970).

[3] Comment, *Pennsylvania Crime Commission . . . Heroes or Heavies?*, 77 Dick. L. Rev. 47, 71 (1972) ; *see* President's Commission on Law Enforcement and Administration of Justice, *The Challenge of Crime in a Free Society* (1967) ; *Task Force Report: Organized Crime* (1967).

[4] Our courts have recognized before that "organized crime" reaches into police corruption. *See Commonwealth v. Staudenmayer,*

The majority finds the petition defective because it does not indicate that "appellant's testimony would relate to a conspiracy to benefit 'organized crime' or 'racketeering.'" I have difficulty understanding that holding. The statute requires only that the "proceeding" relate to organized crime. If, as I contend above, this is an investigation of organized crime, the proposed testimony of this witness as to bribes paid to police officers would clearly show elements of the organized crime; and this demonstrates the Commonwealth's need to immunize the witness.

I would affirm the judgment of contempt.

CERCONE and SPAETH, JJ., join in this dissenting opinion.

---

230 Pa. Superior Ct. 521, 326 A.2d 421 (1974); *In Re Garber Immunity Petition*, 5 Pa. Commonwealth Ct. 544 (1972). I find *Commonwealth v. Brady*, 228 Pa. Superior Ct. 233, 323 A.2d 866 (1974) clearly distinguishable. That case concerned charges of extortion by two township supervisors. The only other persons alleged to be victims of the extortion were the witnesses who refused to testify. For that reason the lower court was correct in finding that the proceeding did not relate to organized crime.

---

DISSENTING OPINION BY CERCONE, J.:

I join in the dissenting opinion of Judge JACOBS, but wish to add the following three observations.

First, it is clear from the majority's decision in the instant case, and the rationale of the Per Curiam affirmance in *Commonwealth v. Brady,* that the majority feels that the immunity act must be strictly construed because of its potential for inducing witnesses to commit perjury. I perceive no such danger inherent in the act. I respectfully suggest that the majority errs when it confuses the instant immunity act with situations involving *promises* of immunity or *promises* of recommendations for leniency in sentencing. In those situa-

tions there is indeed a problem with controlling the urge of a witness to exaggerate or fabricate testimony in order to assure that the Commonwealth will satisfactorily carry out its half of the bargain. That *quid pro quo,* or bargained for exchange, simply does not come into play under the immunity act, where the witness receives immunity *before* he testifies so that he can gain nothing by inventing incriminating testimony. He need not fear punishment in case his testimony ultimately disappoints the Commonwealth's expectations. The witness is confronted, no more-no less, with the same disincentive to lie under oath as any witness would be—the possibility of a perjury conviction. I therefore conclude that the majority's concern about perjured testimony is overstated.

Second, I must renew my disagreement with the majority's interpretation of Section 6 of the Act which, I maintain, is tantamount to reading that section out of the statute. Section 6 was clearly intended to be a statement of those kinds of criminal conduct which the legislature determined to be the *equivalent* of organized crime or racketeering.[1] The majority, however, asserts that "Section 6 sets forth types of conduct which *may* fall within the scope of 'organized crime' and 'racketeering'." In so doing the majority renders Section 6 virtually useless. For instance, if a hearing court asked whether conspiracy to commit murder constituted organized crime or racketeering under Section 6, the majority would answer, "yes", if it would be organized crime and racketeering without Section 6. Thus, the immunity act is left wholly without a definitional referent, as though Section 6 were never written into law.

Finally, I think it is noteworthy that the majority reached the instant conclusion without reference to the

---

[1] See *Commonwealth v. Brady,* 228 Pa. Superior Ct. at 234-42. (Dissenting Opinion by CERCONE, J.)

Corrupt Organizations Act[2] which, in treating the problem of organized crime and racketeering from a different perspective,[3] incorporated the immunity act by reference.[4] From reference to the Corrupt Organizations Act, it becomes immediately apparent that it stands patently in refutation of the interpretation of the immunity act which the majority renders today.

I, therefore, respectfully dissent.

SPAETH, J., joins in this dissenting opinion.

---

[2] Act of December 6, 1972, P.L. 1482, No. 334, §1, 18 Pa. C.S. §911 (1973).

[3] See Note 1, supra.

[4] 18 Pa. C.S. §911 (g) (1973).