Kremer et al., Petitioners, *v.* Shoyer et al., Respondents.

24

Argued January 12, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused August 13, 1973.

*I. Raymond Kremer,* in propria persona, for petitioners.

*James D. Crawford,* for respondent, Judge *Kendall H. Shoyer,* and *Michael Franck,* in propria persona, and also for respondent, *William P. Stewart.*

OPINION BY MR. JUSTICE O'BRIEN, July 2, 1973:

Respondents Michael Franck and William P. Stewart are special counsel conducting a special judicial investigation by order of the Court of Common Pleas of Philadelphia County. Franck and Stewart are responsible for the formulation of charges of unethical conduct where the investigation reveals the need therefor, and for the prosecution of the formal charges. Respondent Shoyer is a judge assigned by the President Judge of the Court of Common Pleas of Philadelphia to hear and review testimony presented by the special counsel for the purpose of determining whether formal charges of unethical conduct should be brought.

In the course of the special judicial investigation, Franck and Stewart began to inquire into the activities of attorneys X-1 and X-2, identified in a confidential report of the Committee of Censors of the Philadelphia

Bar Association as probable violators of the ethical proscription against solicitation. Pursuant to that investigation, Eugene Frohlich, a client of X-1, was subpoenaed to appear before the court. X-1 advised Frohlich that he, Frohlich, should be represented by an attorney at this court appearance and X-1 offered to pay an attorney to provide Frohlich with such representation. Accordingly, Frohlich appeared represented by attorney I. Raymond Kremer, who admits he is being paid by X-1. Judge SHOYER, on motion of special counsel Stewart, disqualified Kremer as attorney for Frohlich because of the conflict of interest arising from the fact that Kremer was being paid by X-1 and not Frohlich. Kremer and Frohlich petitioned us for a writ of mandamus and/or a writ of prohibition, to compel the court to permit Kremer to represent Frohlich and petitioned for a stay of all proceedings until we reached a decision.

Petitioners rely heavily upon DR-5-107 of the Code of Professional Responsibility, which states:

"(A) Except with the consent of his client after full disclosure, a lawyer shall not:

"(1) Accept compensation for his legal services from one other than his client. . . ."

Petitioners argue that since Frohlich consented to Kremer's acceptance of compensation from the attorney under investigation, the Code has not been violated. Stewart and Franck contend that since Frohlich's interests are not affected by the investigation, if X-1, the attorney under investigation, can pay Kremer to advise Frohlich, he might be able to silence the only source of information to which the investigation can turn. Consequently, they argue, citing *Jedwabny v. Phila. Tr. Co.,* 390 Pa. 231, 135 A. 2d 252 (1957), that the court should be able to prevent Kremer from representing Frohlich, for, as respondents contend, "the impropriety or appearance of impropriety" in Kremer's representation of

Frohlich, while being paid by X-1, "seriously impedes the administration of justice," and permits X-1 to circumvent the disciplinary rules.

However, as we said in *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 102, 61 A. 2d 426, 430 (1948): "The writ of prohibition is one which, like all other prerogative writs, is to be used only with great caution and forbearance and as an extraordinary remedy in cases of extreme necessity, to secure order and regularity in judicial proceedings if none of the ordinary remedies provided by law is applicable or adequate to afford relief. It is a writ which is not of absolute right but rests largely in the sound discretion of the court."

Applying the standard spelled out in *Carpentertown, supra,* we do not believe that a writ of prohibition would be appropriate in the instant case. Since the examination of Frohlich must be confined to a determination of whether, in fact, Frohlich had been "unethically solicited", Frohlich need not fear to answer such questions. Preventing him from receiving representation from an attorney paid for by the attorney under investigation does not create a situation of "extreme necessity" so as to justify the issuance of a writ of prohibition.[1]

As for the petitioner's alternative request for a writ of mandamus, as we have frequently stated: ". . . mandamus lies where there is a clear legal right in the plaintiff and a corresponding duty in the defendant, and the act requested is not discretionary but only ministerial, [but] . . . mandamus will not lie *to control* an

---

[1] If the questioning were to branch out into other fields, so that Frohlich's answers could threaten him with the institution of charges against him for acts of fraud against an insurance company, as petitioners contend. then the denial of his right to representation by the attorney of his choice, regardless of who was paying the attorney, might lead us to a different conclusion.

official's discretion or judgment where that official is vested with a discretionary power." (Emphasis in original.) *Garratt v. Philadelphia,* 387 Pa. 442, 448, 127 A. 2d 738, 741 (1956). See also *Martin v. Garnet Valley School District,* 441 Pa. 502, 272 A. 2d 913 (1971); *Travis v. Teter,* 370 Pa. 326, 87 A. 2d 177 (1952); *Skok and Thurner v. Hoch,* 3 Pa. Commonwealth Ct. 640 (1971).

Under that standard, mandamus does not lie in the instant case.

Petition denied.

_____

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I concur in the denial of the petition filed herein "for writ of mandamus and/or writ of prohibition". My reasons, however, differ from those given by my brother O'BRIEN. In a word, I am satisfied that an action in mandamus does lie in a situation of this sort,[1] but that on the merits—a subject treated by the dissenters—I am convinced that the lower court was entirely correct in disqualifying petitioner Kremer from further representation of petitioner Frohlich.

_____

[1] Although I am of the view that mandamus lies, I agree that prohibition is properly denied. The difference between the two is that the first orders that a certain action be taken or not taken, while the latter orders a court of inferior jurisdiction not to act in the matter further because it lacks jurisdiction altogether. The Court of Common Pleas of Philadelphia (of which respondent SHOYER is a sitting judge) has jurisdiction to conduct investigations into the conduct of members of the bar of that County, *In Re Disbarment Proceedings,* 321 Pa. 81, 101, 184 A. 59 (1936); Pa. Sup. Ct. Rule 17-25 ("These [Disciplinary] Rules shall not apply to any special judicial investigation in existence at the time of the adoption of these Rules, which . . . shall be concluded under the procedure established for the conduct of such investigation"), and it would follow that a writ of prohibition would be, for that reason, properly denied.

## I.  Mandamus is a Proper Remedy

The facts bearing on the remedy problem would appear to be as follows:[2] The Court of Common Pleas of Philadelphia, by order of its President Judge JAMIESON, has undertaken an investigation of certain alleged unethical practices committed by members of the Bar of that City. Two attorneys, respondents Michael Franck, Esquire, and William P. Stewart, Esquire, have been appointed special counsel to aid in the conduct of that investigation. Witnesses to be examined in that proceeding are brought by subpoena before a judge of the court and are questioned in an *ex parte* manner by the special counsel. These witnesses, some of whom are former clients of the attorneys under investigation, often bring with them counsel to render advice during the examination. In the matter now before us, attorney X-1 is under investigation. Petitioner Frohlich had been represented by X-1 when Frohlich was plaintiff in an automobile accident case, and was contacted by the special counsel. Immediately after an interview with an investigator, Frohlich telephoned his former attorney X-1 and informed him of the interview and of the fact that he, Frohlich, had been subpoenaed and was to appear before Judge SHOYER on November 3, 1972. Attorney X-1 advised Frohlich that he should have a lawyer when he appeared before the judge and that to that end should telephone I. Raymond Kremer, Esquire, at such-and-such a number the next morning. Frohlich did so, and was told by Mr. Kremer's secretary that Mr. Kremer had been expecting his call and that she would call back and give him an appointment.

---

[2] There are procedural difficulties in establishing the exact facts. See text at note 6 infra. My summary is taken largely from the notes of a hearing held before the respondent Judge SHOYER on November 3, 1972 during which testimony was received as to how Frohlich came to be represented by I. Raymond Kremer, Esquire.

Frohlich later that day again called attorney X-1 and asked him why the services of a lawyer were necessary. X-1 assured him that counsel would be advantageous, and that he, X-1, would pay the fee of Mr. Kremer. Kremer's secretary called Frohlich back and requested him to be in the attorney's office at 9:30 a.m., November 3rd, the day of the hearing. The two met in Mr. Kremer's office and later proceeded to the examination before Judge SHOYER, at which time Kremer was disqualified by order of the court from further representation of Frohlich in the investigatory proceeding. Mr. Kremer told the court at the hearing that he had prior to that day been paid $350 by attorney X-1 as a fee for his representation of Frohlich.

Petitioners' pleading in this Court states essentially a cause of action in mandamus; it requests that this Court enter an order compelling the respondent Judge SHOYER to permit the petitioner-witness Frohlich to be examined with the assistance of any counsel of his choice and, because Frohlich's choice is Kremer, to permit Kremer to represent Frohlich.[3]

The writ of mandamus was one of the high prerogative writs of the King's Bench. As we have often said, it "lies to compel the performance of a ministerial act or mandatory duty where there is clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy." *Travis v. Teter*, 370 Pa. 326, 330, 87 A. 2d 177 (1952).

[3] Petitioners state their requests for relief in the negative, i.e., they ask that the respondent judge be restrained from interfering with petitioner Kremer's representation of petitioner Frohlich. The difference is semantical only.

I also note that it is unnecessary for respondents Franck and STEWART to be parties to this proceeding. If petitioners are entitled to prevail in an action in mandamus against Judge SHOYER, then obviously no relief would be needed or warranted against these other two respondents, who are lesser officers of the Court.

See also *Martin v. Garnet Valley School District*, 441 Pa. 502, 272 A. 2d 913 (1971); *Philadelphia Presbytery Homes, Inc. v. Abington Board of Commissioners*, 440 Pa. 299, 269 A. 2d 871 (1970); *Unger v. Hampton Township*, 437 Pa. 399, 263 A. 2d 385 (1970); *Gallagher v. Springfield Township Board of Commissioners*, 438 Pa. 280, 264 A. 2d 699 (1970). In a proper case it can be utilized to compel a sitting judge of a court of common pleas to perform an act which he has no power to refuse to perform. *Commonwealth ex rel. Duff v. Keenan*, 347 Pa. 574, 33 A. 2d 244 (1943). It cannot be used where the act sought to be compelled lies within the discretion of the respondent official to act or not to act, *Morgan v. Bucher*, 442 Pa. 498, 276 A. 2d 523 (1971), nor is the writ available where there is open to the petitioner another adequate remedy, *Lewis v. Emmott*, 385 Pa. 336, 122 A. 2d 727 (1956). And finally, the court to which application for the writ is made has itself a discretion to refuse to grant the writ. *Dombrowski v. City of Philadelphia*, 431 Pa. 199, 245 A. 2d 238 (1968).

Assuming for the moment that the petitioners are correct in their claim that Frohlich has a clear[4] legal right to have Kremer represent him and that Judge SHOYER has a legal duty to respect that right, then the only stumbling block that might remain to establishment of a cause of action in mandamus would be the requirement that there exist no other adequate legal remedy. I know, however, of no procedure whereby either petitioner, neither of whom is a party to any ongoing judicial proceeding, could otherwise obtain review of the order disqualifying Kremer. In short,

---

[4] The right asserted here is not made unclear by the need for an interpretation of a statute or the announcement of a new principle of law. If there are no other means of review, then novel questions must be and are decided in actions for mandamus. *Booz v. Reed*, 398 Pa. 172, 157 A. 2d 170 (1960).

given the existence of the right alleged, I think that mandamus is the remedy.[5]

## II. This Action Is Not Ripe For Decision

This Court has original jurisdiction over an action brought in mandamus against a court of inferior jurisdiction. Pa. Const. art. V, §2; Act of July 31, 1970, The Appellate Court Jurisdiction Act of 1970, P. L. 673, No. 223, art. II, §201, 17 P.S. §211.201 (Supp. 1973-74). An action in mandamus is an action at law, the procedure of which is governed by Pennsylvania Rules of Civil Procedure 1091-1099. Rule 1091 provides that "[e]xcept as otherwise provided in this chapter, the procedure in the action of mandamus shall be in accordance with the rules relating to the action of assumpsit". Those rules, of course, establish the methods of pleading, answering, alleging affirmative defenses in new matter, replying, moving for judgment on the pleadings, summary judgment, etc.

The present original action in mandamus is before the Court through the following pleadings and other

[5] The United States Court of Appeals for the Third Circuit in *Schlesinger v. Teitelbaum*, 475 F. 2d 137 (3d Cir. 1973), entertained a petition for writ of mandamus on the following facts. Schlesinger, an attorney, had been limited by an order of a judge of the District Court of the United States for the Western District of Pennsylvania to an attorney's fee consistent with the fee schedule approved by the district court in seamen's cases, a fee lower than that negotiated between Schlesinger and his client, a seaman. Schlesinger brought an action in mandamus against the federal district court judge in the Third Circuit, and that court, while not disputing the propriety of proceeding in mandamus, held that the writ would not issue because the lower court had power to act as it did. The case now at bar seems to me to be on all fours with *Schlesinger*.

See also *Schlagenhauf v. Holder*, 379 U.S. 104, 13 L. Ed. 2d 152 (1964); *La Buy v. Howes Leather Co.*, 352 U.S. 249, 1 L. Ed. 2d 290 (1957). See generally Note, *Supervisory and Advisory Mandamus Under the All Writs Act*, 86 Harv. L. Rev. 595 (1973).

papers which have been filed: a petition for writ of mandamus, an answer by respondents Franck and Stewart, an answer by respondent Judge SHOYER, a reply to both answers,[6] and various exhibits, briefs, memoranda and letters in support of the parties' relative positions. The parties have not entered into a stipulation of the facts. Petitioners assert that the record consists of the pleading (as it does) and contend that "the facts in this matter are properly set forth and pleaded in the petitioners' Petition and their Replies to the Answers." The fact is, however, that a number of material allegations are denied or qualified in the answers, and the resolution of such disputed points would require an adjudication of the merits, either by way of a motion for summary judgment or after an evidentiary hearing. No such motion has been made, however, and this Court has not proceeded to a hearing or appointed a master for that purpose.

It is clear, therefore, that while the form of action selected by petitioners is in my view proper, the matter is not yet capable of disposition on the merits. We should, in the proper exercise of our original jurisdiction, appoint a master to resolve disputed factual issues, cf. *Schubach v. Zoning Board of Adjustment*,      Pa.    , 308 A. 2d 595 (1973).

## III. The Court of Common Pleas Violated No Duty and the Writ Is Properly Denied

The dissenters, however, address themselves to the merits of this action. On the basis of the facts which

---

[6] Under Pa. R.C.P. 1017(a), a reply is permissible only if "the answer contains new matter or a counterclaim." A counterclaim is not permitted in mandamus, Pa. R.C.P. 1096, and none was pleaded. Neither was any new matter (affirmative defenses, see Pa. R.C.P. 1030) asserted. It follows that the Replies filed by petitioners were improperly placed before this Court.

appear to me to be undisputed, I would venture to say that Judge SHOYER acted correctly and that he had no legal duty to permit Kremer to represent Frohlich and no duty to permit Frohlich to insist on representation by Kremer. In the absence of such a duty, a writ of mandamus should not issue, notwithstanding that mandamus is in my view the proper form of action here.

The starting point in the consideration of this matter must be the code of Professional Responsibility, adopted by the American Bar Association,[7] and which is embodied in the rules of this Court. Pa. R.C.P. 205.[8]

The Code, like Gaul, is divided into three parts: canons, ethical considerations, and disciplinary rules. The canon with which we are today concerned is Canon 5: "A lawyer should exercise independent professional judgment on behalf of a client." The Canons, as the American Bar Association states, are statements of "axiomatic norms".[9] The *ethical considerations,* on the other hand, are said to be "aspirational in character and represent the objectives toward which every member of the profession should strive." There are two ethical considerations which are relevant here and which serve to interpret Canon 5. Ethical Consideration 5-22 reads in part that "if a lawyer is compensated from a source other than his client, he *may* feel a sense of responsibility to someone other than his client." (My

---

[7] American Bar Association, Code of Professional Responsibility (Final Draft, 1969).

[8] See also Pa. Sup. Ct. Rule 17-3, which provides: *"Grounds for Discipline:* Acts or omissions by an attorney, individually or in concert with any other person or persons, which violate the Code of Professional Responsibility of the American Bar Association, as from time to time in effect in Pennsylvania, shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship."

[9] ABA Code of Professional Responsibility (Final Draft, 1969) (Preliminary Statement).

emphasis.) Ethical Consideration 5-23 cautions that "[a] person . . . that pays or furnishes lawyers to represent others possesses a potential power to exert strong pressures against the independent judgment of those lawyers." Lastly, the *disciplinary rules* are said by the A.B.A. to be "mandatory in character. The Disciplinary Rules state *the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action.*" (My emphasis.)

Petitioner Kremer points out that his conduct in this matter is not barred by the terms of Disciplinary Rule 5-107(A)[10] because Frohlich knew of Kremer's arrangement with X-1 and consented to it. I agree that such consent is indicated in the record, but add that it is not surprising that the Disciplinary Rules, the *minimum* acceptable standards of the Bar, have not been drafted to condemn in specific terms the highly unusual situation presented here.

It is important to bear in mind not only that attorney X-1, the lawyer under investigation, agreed to pay for legal services rendered by Mr. Kremer, but also that X-1 in fact suggested to Mr. Frohlich that he should have a lawyer present at the investigation and recommended that Kremer be the lawyer so employed. The initial choice of Kremer as the lawyer for Frohlich was not Frohlich's, but that of X-1, and X-1's undertaking to pay for the services was coupled with the engagement of Kremer as the lawyer. It should be noted that DR 5-107(a), supra, does not deal with the question of *selection* of counsel; it deals only with pay-

---

[10] "DR 5-107 *Avoiding Influence by Others Than the Client.*

"(A) Except with the consent of his client after full disclosure, a lawyer shall not:

"(1) Accept compensation for his legal services from one other than his client.

"(2) Accept from one other than his client anything of value related to his representation of or his employment by his client."

ment. The fact that Frohlich went along with this selection surely does not prevent a court from questioning its propriety and rule against it under all the circumstances. I know of no constitutional right of a lawyer under investigation for possible misconduct to invest his client, a witness in the investigation, with another lawyer of his own choosing and whom he pays. In short, while the conduct here is not a ground for disbarment under the precise language of DR 5-107 (A), I must say that it does not strike me as conforming to "the highest ethical standards of our bar", as Mr. Justice Nix describes it. (See Dissenting Opinion, post at 41).

Canon 5 concerns itself with but one interest: that of the client (here Frohlich) in receiving "independent professional judgment". Where the fact of payment from a third party is disclosed to the client, the position taken by DR 5-107 would seem to be that the client will be sufficiently apprised of the risk of conflict and will be on guard. But in this case there is at stake an interest other than that of Frohlich; there is the public interest and the need for public confidence in the conduct of this judicial inquiry into unethical practices.

In dealing with the conduct of lawyers and judges, it is a truism that appearances are as important as the actual facts. In the words of the old maxim, "justice should not only be done, but should . . . be seen to be done."[11] Canon 9 of the Code of Professional Responsibility stipulates that "[a] lawyer should avoid *even the appearance* of professional impropriety". (Emphasis my own.)[12] While the motives of X-1 in selecting

---

[11] *Rex v. Sussex Justices*, 1 K.B. 256, 259 (1924) (Lord HEWART, C. J.).

[12] See also Ethical Consideration 9-1: "Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confi-

and agreeing to pay for the services of Mr. Kremer may be beyond reproach (i.e., may be motivated by a genuine sense of obligation to the client), and the action of Mr. Kremer under this arrangement may be completely independent, it cannot be gainsaid that the appearance of the relationships are not good. Where the person that pays and furnishes a lawyer to represent another is himself a lawyer under court investigation, and where the other is his client called to give testimony in the investigation, no argument should be required to demonstrate that the *appearance* of impropriety is present.

"Courts have an inherent power to make and follow rules governing [the discipline of members of the bar] or to formulate new rules as the case demands so long as no right of the member charged is invaded. . . . A court may conduct a general investigation of unprofessional conduct in an effort to rid the practice of undesirable members. . . ." *In re Disbarment Proceedings,* 321 Pa. 81, 101, 184 A. 59 (1936). A client's right to a *specific* lawyer is not absolute, *Moore v. Jamieson,* 451 Pa. 299, 306 A. 2d 283 (1973). The Philadelphia Court of Common Pleas was fully within its competence in seeking to preserve the integrity of its investigative proceeding by insuring that appearances of impropriety were avoided. The disqualification of Mr. Kremer was appropriate to that end, and did not constitute a violation of either his constitutional rights or those of the client Frohlich.[13]

---

dence in our system and in the legal profession." and Ethical Consideration 9-2: ". . . When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession."

[13] The Opinion of the Court states that "the examination of Frohlich must be confined to a determination of whether, in fact, Frohlich had been 'unethically solicited'. . . ." A reading of re-

For the reasons stated, I join in the denial of the writ of mandamus.

Mr. Justice EAGEN joins in this concurring opinion.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I join Mr. Justice NIX's dissenting opinion and agree that the majority incorrectly decides the merits of the issues presented. However, in my view, this controversy may well be resolved without necessarily reaching the merits of the substantive issues.

Respondents, Attorneys Franck and Stewart—counsel for a special judicial investigation—have no standing to challenge Attorney Kremer's right to represent and advise his client, Mr. Frohlich. If respondents assert professional impropriety by Mr. Kremer, that becomes a matter for the Disciplinary Board which has the power and duty to "consider and investigate the conduct of any attorney. . . ." Rule 17-5(c)(1) of the Rules of the Supreme Court of Pennsylvania. In the present circumstances respondents are not entitled to interrupt the ongoing investigation of attorney X-1 by interposing, as a collateral matter, their assertion of allegedly improper conduct by Mr. Kremer.

---

spondents' answers reveals that the examination of other witnesses has dealt with the subject of medical expense frauds (as will that of Frohlich in the future). Petitioner Kremer has throughout asserted that he bases no objection to such questions on the ground that they go beyond the scope of the investigation. I see no reason for the majority to have thus apparently limited the scope of this inquiry.

In footnote 1 of the Opinion of the Court, it is suggested that "[i]f the questioning were to branch out into other fields [such as] acts of fraud against an insurance company, . . . then the denial of his right to representation by the attorney of his choice, regardless of who was paying the attorney, might lead us to a different conclusion." I must note my disagreement with the accuracy of or the necessity for this observation.

In our adversary system of jurisprudence, one litigant may not reject or disqualify another person's counsel. Manifestly, nothing could be more offensive to the integrity of a judicial proceeding than affording one party the voice to remove his adversary's lawyer. Such a collateral course of controversy—if permitted—could only serve to unnecessarily delay and burden the primary purpose of the proceedings—without in any way advancing its legitimate objectives or the quality of the inquiry.

It was an obvious abuse of discretion for the court to entertain respondents' motion to disqualify Mr. Kremer and prejudicial error to order such disqualification.

I dissent.

Mr. Justice MANDERINO joins in this dissenting opinion.

---

DISSENTING OPINION BY MR. JUSTICE NIX:

The result reached by the majority today forces me to dissent for the following reasons.

At issue in this proceeding is whether petitioner Kremer, a member of the bar of this Court, should be allowed to represent petitioner Frohlich, a client of attorney X-1. This question arose during the course of a special judicial investigation when Mr. Frohlich was subpoenaed to testify with respect to a certain personal injury case in which X-1 had served as his counsel. When Mr. Frohlich appeared before the court with Mr. Kremer as his attorney, Mr. Kremer was disqualified by order of the Court on the ground that there was a conflict of interest due to the fact that Mr. Kremer was being paid by X-1 and not Mr. Frohlich.

At the outset, I note that Mr. Frohlich's right to counsel of his choice is not at issue. In their answer to the petition the respondents specifically admit: "No one has suggested that Petitioner Frohlich may not be

40

represented by counsel of *his* choice. The Order below seeks to prohibit Petitioner Frohlich from being represented by counsel of X[-1]'s choice." (Emphasis in original.)[1] Indeed, any attack on petitioner Frohlich's right to retain counsel would be ineffectual. The sanctity of the right to retain counsel in both civil and criminal cases was recognized in *Powell v. Alabama,* 287 U.S. 45 (1932),[2] where the Supreme Court explicitly stated that: "If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." 287 U.S. at 69. Similarly, this Court has recently observed in an analogous situation that "[t]he right to counsel of one's own choosing is particularly significant because an individual facing criminal sanctions should have great confidence in his attorney." *Moore v. Jamieson,* 451 Pa. 299, 307-08, 306 A. 2d 283, 288 (1973). See *Commonwealth v. Velasquez,* 437 Pa. 262, 265, 263 A. 2d 351, 353-54 (1970); *Commonwealth ex rel. Goodfellow v. Rundle,* 415 Pa. 528, 533, 204 A. 2d 446, 448 (1964); Kamisar, *Betts v. Brady Twenty Years Later: The Right to Counsel and Due Process Values,* 61 Mich.

[1] The Order of the court below, dated November 16, 1972, which disqualified Mr. Kremer from representing Mr. Frohlich, provides: "This Order is not to be construed to preclude Messrs. [X] and [Y] from advising clients subpoenaed by the Court, of *their rights to be represented by counsel of their choosing* if such client's request advice from them." (Emphasis added.)

[2] In *Powell v. Alabama,* it was held that failure to provide effective counsel in a capital case violated the due process clause of the fourteenth amendment. It was determined that in such circumstances the aid of counsel was encompassed within those fundamental principles of liberty and justice guaranteed by the constitutional requirement of due process of law.

L. Rev. 219 (1962); *The Right to Counsel: A Symposium*, 45 Minn. L. Rev. 693 (1961).

I recognize that an individual's right to counsel of his choice is not absolute, particularly in light of the state's interest in establishing standards to control the practice of law in its courts. In the instant case, we have as conflicting interests the right of Mr. Frohlich to retain Mr. Kremer as his attorney and the right of the state to discipline lawyers to prevent unethical and unprofessional conduct. In balancing these conflicting interests, I must conclude that the state's interest in assuring that the administration of its legal system is properly controlled is not a sufficiently compelling interest to justify the degree of infringement (i.e., disqualification of his attorney) imposed upon Mr. Frohlich's right to counsel.

Here, it is alleged that petitioner Kremer should be disqualified because of the arrangement whereby X-1 referred Mr. Frohlich to Mr. Kremer and undertook to pay Mr. Kremer's fee. It is averred that this situation necessarily gives rise to a conflict of interest in violation of the Code of Professional Responsibility. However, it is my belief that petitioner Kremer has adhered to the highest ethical standards of our bar.

Disciplinary Rule 5-107 of the American Bar Association's Code of Professional Responsibility, the standard applicable to the instant case, provides as follows:

"D.R. 5-107   Avoiding Influence By Others Than the Client

"(A)   *Except with the consent of his client after full disclosure,* a lawyer shall not:

"(1)   Accept compensation for his legal services from one other than his client.

"(2)   Accept from one other than his client anything of value related to his representation of or his employment by his client.

"(B) A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services." (Emphasis added.) It is not disputed that Mr. Kremer made a full and voluntary disclosure to Mr. Frohlich of the method of referral and of the payment arrangement. Moreover, Mr. Frohlich was also fully cognizant of the possible conflicts that could arise between he and X-1 when he chose Mr. Kremer to represent him. Subsequent to his retaining Mr. Kremer, Mr. Frohlich has stated that he has complete faith in the ability and ethics of Mr. Kremer and that he is fully satisfied with the legal services rendered and the advice offered by his present attorney.

The record before us fails to sustain any suggestion that Mr. Frohlich received inadequate or inefficient representation from Mr. Kremer or that the method by which he was retained has in any way influenced his handling of this case. Notwithstanding the absence of actual misconduct and Mr. Kremer's complete and voluntary explanation of the entire arrangement to Mr. Frohlich, the respondents maintain that the court below was acting within its discretion in disqualifying Mr. Kremer because "even the appearance of impropriety" cannot be tolerated. However, in my view, a subtle appearance of impropriety is not a sufficiently compelling reason to disqualify an attorney from representing a client who is fully aware of all possible conflicts of interest. As pertinently stated in the Ethical Considerations applicable to Canon 9:[3] "In order to avoid misunderstandings and hence to maintain confidence, a lawyer should fully and promptly inform his client of material developments in the matters being handled

---

[3] "A Lawyer Should Avoid Even the Appearance of Professional Impropriety", ABA Canons of Professional Responsibility No. 9.

for the client. While a lawyer should guard against otherwise proper conduct that has a tendency to diminish public confidence in the legal system or in the legal profession, *his duty to clients or to the public should never be subordinate merely because the full discharge of his obligation may be misunderstood or may tend to subject him or the legal profession to criticism.*" (Emphasis added.) Ethical Consideration 9-2, ABA Canons of Professional Responsibility No. 9.

In my estimation, public confidence in our legal system will only be eroded where there is no attempt to disclose potentially conflicting interests. Here, Mr. Kremer by virtue of his voluntary disclosures has upheld the integrity of his profession and, in fact, has exercised proper judgment in competently safeguarding the interests of his client, Mr. Frohlich, to whom he owes a solemn duty. Having found no conduct that would warrant a conclusion that the arrangements between counsel and client in fact have improperly influenced counsel's handling of the case, I believe the disqualification of counsel was completely arbitrary and constitutes an unreasonable and intolerable burden on the constitutional right to counsel of one's choice.

I would reverse the order of the court below disqualifying Mr. Kremer as attorney for Mr. Frohlich.