361 A.2d 325

In re JANUARY 1974 SPECIAL INVESTIGATING GRAND JURY.

Petition of Walter M. PHILLIPS, Jr.

In re Marvin COMISKY, Esq. and Jerome Richter, Esq., Appellants.

Superior Court of Pennsylvania.
June 28, 1976.

Marvin Comisky, J. Richter, Philadelphia, for appellants.

R. Cole, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from the order of the lower court's supervising judge of Philadelphia's January 1974 Special Investigating Grand Jury, prohibiting appellants, Marvin Comisky and Jerome Richter, attorneys and partners of the law firm of Blank, Rome, Klaus and Comisky, and their firm, from representing more than one of three witnesses who were subpoenaed to appear and give testimony before the Grand Jury.

The three witnesses appeared before the Grand Jury and, on advice of counsel, invoked the privilege against self-incrimination. None of these witnesses was offered or received immunity so as to be an imminent witness against the other two witnesses. Subsequently, the special prosecutor filed a petition in the lower court for the disqualification of appellant-attorneys, alleging the grounds set forth in the following paragraphs:

"6. The January 1974 Special Investigating Grand Jury is currently investigating possible criminal violations by Messrs. Krumbhaar, Higgins and Gordon and others in connection with the awarding of certain architectural contracts by the Philadelphia Board of Education to Hesser-Higgins and Krumbhaar, Inc.

7. Pursuant to this investigation, the grand jury has subpoenaed and heard testimony from Messrs. Krumbhaar, Higgins and Gordon regarding their knowledge of the circumstances surrounding the award of said contracts.

8. Messrs. Krumbhaar, Higgins and Gordon each invoked his privilege against self-incrimination in response to questions concerning each witness's knowledge of or participation in payoffs in return for said contracts and also in response to questions concerning each witness's knowledge of the participation of the remaining two witnesses in payoffs in return for said contracts.

9. The Grand Jury has received information from reliable sources that a public official has participated in an extortionate scheme to influence the award of a Philadelphia School Board architectural contract to Hesser-Higgins and Krumbhaar, Inc.

10. Marvin Comisky, Esquire, and Jerome Richter, Esquire, both partners of the firm of Blank, Rome, Klaus & Comisky, have been retained to represent Hesser-Higgins & Krumbhaar, Inc., a corporation, and Messrs. Krumbhaar, Higgins and Gordon, as individuals."

Appellant-attorneys filed an answer to the petition, asserting that an order granting the petition would effectively:

1. deny the witnesses their constitutional right to counsel of their choice, where no conflict of interest existed;

2. deny the witnesses their right to waive conflict-free counsel;

3. deny appellant-attorneys their (constitutional) right to pursue their profession.

Prior to argument on the petition and answer, the supervising judge held an in-camera session with the special prosecutor who purportedly gave the judge information supporting his petition for disqualification. The nature and character of this information was not revealed

250

to appellants, and was not preserved to enlighten us on this appeal.

At the argument before the supervising judge, Jerome Richter, Esq., one of the appellants, requested that the in-camera information submitted to the judge by the special prosecutor be made available to appellants so that the issue of conflict of interest could be intelligently disputed. The judge refused the request on the ground that the in-camera session information was part of the secret grand jury proceedings. Consequently, the hearing, which according to the argument of appellants was to have been evidentiary in nature in order to resolve the conflict of interest issue, deteriorated entirely into arguments by the special prosecutor and appellants, the crux of which was whether the information provided at the in-camera session should be available to appellants. None of the three witnesses testified, so that the supervising judge was not apprised of their understanding of the nature of a conflict of interest in appellants' multiple representation. None of the appellant-attorneys testified in order to resolve, either through direct or cross-examination, the presence or absence of conflict of interest in the law firm's representation of more than one witness. Thus, solely on the basis of the petition for disqualification, appellants' answer, the arguments on both sides, and the in-camera session information, and without receiving relevant testimony, the supervising judge filed a memorandum opinion and order granting the disqualification of appellants in their representation of more than one witness before the grand jury. Appellants filed in this court an appeal from the lower court's order, and a petition for a writ of prohibition. We shall consider this matter on the appeal rather than on the writ of prohibition.[1] Supersedeas was granted by this court pending our decision.

1. See *Pirillo v. Takiff*, 462 Pa. 523, 341 A.2d 896 (1975), affirmed on reargument, 466 Pa. 187, 352 A.2d 11 (1975), on the nature and purpose of appellate review based on a writ of prohibition.

The appellants raise a number of issues. Principally, they contend that the supervising judge erred in disqualifying them on grounds of conflict of interest, where:

(a) The witnesses have exercised their constitutional right to retain counsel of their choice;

(b) Each of the witnesses has invoked his privilege against self-incrimination and has neither received nor been offered immunity.

(c) The subpoenaed witnesses have been interviewed by counsel who has represented to the supervising judge that he is satisfied that there exists no apparent or actual conflict of interest; and,

(d) If any conflict did exist, which is denied, the witnesses have offered to waive voluntarily and knowingly any rights they may have to conflict-free counsel.

In addition, appellants contend they were denied a purposeful hearing on the conflict of interest issue when the supervising judge refused to divulge the in-camera information relative to that issue.

The supervising judge, in support of his order disqualifying appellants relied primarily on the decision in *Pirillo v. Takiff*, note 1 supra. We find the facts in the instant case, however, distinguishable from those in *Pirillo* and, consequently, compel a different result.

In *Pirillo*, the 12 policemen who were subpoenaed before the grand jury consulted with two attorneys who were paid by the Fraternal Order of Police (F.O.P.), an organization of which each subpoenaed policeman was a member. The F.O.P. had publicly announced its policy to resist cooperation with the grand jury. The subpoenaed policemen were specifically named in the Crime Commission Report to have taken bribes and payoffs for illegal protection, and were allegedly a part of the purportedly on-going, systematic, repetitious and widespread corruption in the police department. The supervising

judge held an evidentiary hearing at which three of the subpoenaed policemen testified, and the remaining policemen merely gave their names and addresses as part of the stipulation that their testimony would be similar to that of the three policemen who testified. The appellant-attorneys also testified. On the basis of this hearing, and upon the information received by the supervising judge in-camera from the special prosecutor in connection with his petition to disqualify the attorneys on the grounds of conflict of interests, the lower court granted the petition for disqualification.

The Supreme Court in *Pirillo* employed an interest-balancing approach to determine whether the supervising judge acted properly in disqualifying the appellant-attorneys. On one side of the scale the Court acknowledged that in precluding multiple representation because of conflict of interest, the supervising judge necessarily limited: (1) the witnesses' right to retain counsel of their choice and waive their right to conflict-free counsel;[2] (2) the attorneys' right to pursue their profession, which cannot be curtailed without due process of law;[3] and, (3) the witnesses' right of freedom of speech and their right to collectively retain counsel.[4] On the other hand, the court held that these rights are not unlimited—the public has a countervailing right to a free and untrammelled grand jury investigation, a right which is served by the tradi-

2. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Commonwealth ex rel. Goodfellow v. Rundle,* 415 Pa. 528, 204 A.2d 446 (1964). See also *United States v. Garcia,* 517 F.2d 272, 17 Crim.L.Rptr. 2446 (5th Cir. 1975); *United States v. Jeffers,* 17 Crim.L.Rptr. 2421 (7th Cir. 1975).

3. *Dent v. West Virginia,* 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889); *Moore v. Jamieson,* 451 Pa. 299, 306 A.2d 283 (1973).

4. *United Transp. Union v. State Bar of Michigan,* 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971); *United Mineworkers v. Illinois State Bar Ass'n,* 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); *Brotherhood of Ry. Trainmen v. Virginia,* 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); *National Ass'n for the Advancement of Colored People v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

tional secrecy of grand jury testimony and orderly, unobstructed procedure. As the Court stated, "none of the three rights asserted by petitioners are absolute ones; they may be weighed against competing state interests." [5]

In looking to the record, the Court in *Pirillo* found that the probability of a conflict of interests and obstruction of the grand jury investigation was demonstrated by the attorneys' fee compensation arrangement with the F.O.P., and that organization's avowed purpose of obstructing the grand jury; the alleged specific involvement in criminal activity of the subpoenaed policemen supported by the Crime Commission Report; the testimony of the policemen and the attorneys at the evidentiary hearing which demonstrated the divided loyalties of the attorneys and the limitations of their ability, under those circumstances, to act consistently in the best interests of their individual clients; and, finally, the likelihood of open-ended representation by the attorneys should other policemen be subpoenaed. Hence, the Court concluded that the value of a witness' right to counsel of his choice was minimal when chosen counsel was inherently unable to commit himself to act in the best interests of his client; that an attorney's right to practice his profession was minimal when such practice at best operated on the margin of ethics; [6] and, finally, that the interests of the Commonwealth in disqualifying the attorneys was great, when not to do so created a substantial likelihood that the grand jury investigation would be stymied for reasons apart from legally cognizable and protected interests of the

5. 462 Pa. at 523, 341 A.2d at 901. See *Comm. ex rel. Camelot Detective Agency v. Specter,* 451 Pa. 370, 303 A.2d 203 (1973); *Comm. v. McClosky,* 443 Pa. 117, 277 A.2d 764 (1971); Kremer v. Shoyer, 453 Pa. 22, 311 A.2d 600 (1973). See also *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *United States v. Dionesio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); and the cases cited in notes 2 through 4, supra.

6. See ABA, Code of Professional Responsibility, D.R. 5–105 and 5–107.

witnesses. Thus, in applying the standards enunciated by the Court in *Moore v. Jamieson,* note 3 supra, the Court concluded:

1. That the state interest sought to be achieved could not be effectively accomplished in some manner which would not infringe upon interests protected by constitutional rights;

2. That the state interest was sufficiently compelling, when compared to the interests affected, to justify the infringement of those interests;

3. That the state interest was sufficiently compelling to justify the degree of infringement necessary to effectuate that interest; and,

4. That the order under challenge represented the narrowest possible infringement consistent with effectuating the interest involved.

The Court specifically stated, however, that multiple representation *per se* was not impermissible. 462 Pa. 511, 341 A.2d 896. See also *Commonwealth v. Wilson,* 429 Pa. 458, 240 A.2d 498 (1968).

■ Returning to the instant case we ask, "To what evidence of record can we look in support of the court's order disqualifying appellant herein?" The answer is, "None." The only action taken by the attorneys in the instant case that even hints of a conflict of interest, or could be characterized as obstructive, is a letter sent to the Attorney General advising him that the witnesses would resist any attempted grant of immunity. However, to find that the letter indicates that appellants are not acting in the best interests of their clients, especially since immunity has not yet been offered, would be unwarranted and premature. Under the immunity statute of this Commonwealth, it will not be unusual for the grantee of the immunity, whom the law considers as the only one to benefit from such an order, to attack the va-

lidity of the grant of immunity.[7] This possibility of attack on immunity by the proposed grantee is not surprising for, although the grant of immunity protects the immunized witness from suffering criminal sanctions for the conduct about which he testifies, it does not insulate him from the personal and social repercussions, including damage to his reputation, which may well ensue. These latter considerations may be powerful indeed, in some cases to the point that the witness will choose incarceration for contempt of court rather than testifying.[8] Hence, it is not at all clear that the attorneys in the instant case necessarily, or even probably, acted in a fashion inconsistent with the best interests of at least one of the witnesses, at least insofar as that witness perceived what his best interests were. Therefore, the letter to the Attorney General, at this time, manifests no dereliction on the part of counsel to single-mindedly advance the best interests of any of the witnesses.

 Lacking proof on the record of a conflict of interest or obstruction of the grand jury investigation, the Commonwealth next argues that we should defer to the judgment of the supervising judge who, *presumably*, received evidence of such conflict and obstructionism during an in-camera hearing he conducted with the special prosecutor.[9] First, we have no way of knowing what evidence was presented to the judge at this hearing, since the session was not recorded and sealed in case of ap-

7. See, e. g., *Commonwealth v. Brady*, 228 Pa.Super. 233, 323 A.2d 866 (1974), rev'd —— Pa. ——, —— A.2d —— (July, 1975).

8. Indeed, it may well be that, in order to have standing to attack the order, the immunized witness must first refuse to testify and be cited for contempt of court. *Id.* at 235, 323 A.2d 866, n. 1 (Dissenting Opinion by Cercone, J.)

9. Ordinarily, the in-camera session is conducted to apprise the judge of the nature and scope of the grand jury inquiry and provide him with a sufficient evidentiary background to rule intelligently on the matters at hand, and restrain the prosecutor who, conceivably, can overreach the bounds and objectives of the grand jury.

peal.[10] Thus, even if we were to conclude that an in-camera session sufficiently protected the rights under consideration, in light of the tradition of grand jury secrecy, we still would have to remand for a new in-camera hearing, to be recorded, so that appellants would have an opportunity for a meaningful appeal. However, we are of the opinion that the right of an attorney to pursue his profession, and the concomitant right of the witnesses to have counsel of their choice, cannot be decided on the basis of a secret session, even in relation to a grand jury investigation where the special prosecutor presents information to the supervising judge concerning disqualification of an attorney in the representation of more than one witness. A formal hearing is mandatory. In *Pirillo*, the appellants did not request the benefit of the in-camera information, nor was it made an issue in that case. Furthermore, the *Pirillo* decision did not rest primarily on the fact that an in-camera hearing was held. Indeed, most of the facts giving rise to the Court's conclusion that the disqualification of the attorneys was proper in that case was gleaned from the evidentiary hearing conducted on the record.

We are not persuaded by the special prosecutor's argument in rebuttal that, since in-camera hearings are a sufficient predicate to a statutory grant of immunity, they are a sufficient basis for the disqualification of the attorneys herein. In the former situation the prospective witness who is to be the beneficiary of the grant of immunity can suffer no legally cognizable detriment if he is granted transactional immunity. Hence, the immunity situation presents a paradigm case for ex parte disposition. In the instant situation, however, both the witnesses and the attorneys stand to be deprived of rights closely related to invaluable constitutional rights; to wit, the right to counsel of one's choice and the right to prac-

10. See, e. g., The Jencks Act, 18 U.S.C. § 3500.

tice one's profession, respectively. Unless a more compelling state interest is demonstrated, the state may not dispense with these rights by in-camera hearing, thus denying appellants the ordinary, minimal protections of due process of law.

We do not imply that, in support of his petition to disqualify an attorney, it will be necessary for the special prosecutor to produce the witnesses whose testimony allegedly supports an inference that multiple representation will lead to contrived "stonewalling" of the grand jury and frustration of its purpose. It would be acceptable if, by affidavit attached to his petition, the special prosecutor set forth the *substance* of the testimony, the salient facts, supporting his petition for disqualification, without disclosing particulars such as the names of witnesses who provided such testimony. The hearing on the petition could then be limited to whether the allegations are sufficient to justify the disqualification of the attorney in question. At least that procedure would assure the affected parties an opportunity for a meaningful hearing and an effective appeal.

Finally, as persuasive authority supplementing the *Pirillo* case, the special prosecutor refers us to the lower court's ruling *In Re: Investigation Before the April 1975 Grand Jury*, 403 F.Supp. 1176, 18 Crim.L.Rptr. 2183 (D.C.1975), wherein the District of Columbia District Court granted a similar petition to disqualify an attorney from representing 100 union members. Since, in that case, the attorney had been retained and paid by the union, and all the members of the union who were subpoenaed refused to testify on Fifth Amendment grounds after consulting with him, the factual situation was very similar to *Pirillo*. Not surprisingly, the district court relied extensively on the *Pirillo* decision in granting the government's petition. However, since the preparation of briefs and the argument in the instant case, the District of Columbia Circuit Court has reversed the district

court and reinstated the attorney.[11] Interestingly, the principal reason for the reversal was the circuit court's determination that the lower court did not have an adequate factual basis to disqualify the attorney. Glaringly absent from the record was any evidence of the witnesses' views concerning the conflict of interest.[12] Although the circuit court only implicitly rejected the *Pirillo* case with regard to disqualification of an attorney for multiple representation when he is retained by a union or association, it explicitly labelled erroneous that part of the *Pirillo* decision which required each witness to retain separate counsel.[13]

Of course, the circuit court's decision cannot affect the validity of *Pirillo* for our purposes, but it does persuade that *Pirillo* should not be given the expansive reading suggested by the special prosecutor herein. It further demonstrates that the need for grand jury secrecy should not be given such overriding significance that multiple representation coupled with an in-camera discussion of the facts with the supervising judge, will suffice to support a petition to disqualify an attorney. Since no witness is barred from reiterating his testimony the moment he leaves the grand jury room [14] and, since the purpose to be served by secrecy is the protection of the members of the grand jury and the witnesses from improper influence by those under investigation, the Commonwealth's interest in secrecy is adequately protected by the procedure set forth above. This is especially true where, as here, the "targets" of the investigation are known, and the names of the witnesses who have testified are not re-

11. *In re: Investigation Before the April 1975 Grand Jury,* 174 U.S.App.D.C. 268, 531 F.2d 600 (1976).

12. *Id.* At 607.
Indeed, counsel in that case admitted that the potential for conflict of interest was so great that he avoided the discussion of the details of the case with any of the witnesses. At 603.

13. *Id.* At 606, n. 11.

14. *Id.*

vealed in the affidavit supporting the petition to disqualify the attorney.

For the foregoing reasons, the order of the lower court is vacated and the case is remanded *a procedendo.*

VAN der VOORT, J., concurs in the result of this opinion.

PRICE, J., files a dissenting opinion.

PRICE, Judge (dissenting).

I believe that *Pirillo v. Takiff,* 462 Pa. 523, 341 A.2d 896 (1975), *aff'd on rehearing,* 466 Pa. 187, 352 A.2d 11, *cert. denied,* 423 U.S. 1083, 96 S.Ct. 873, 47 L.Ed.2d 94 (1976), controls the instant appeal, and am unpersuaded by the majority's struggles to distinguish the principle involved. I, therefore, dissent and would affirm the order of the lower court.